# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Matthew F. Kennelly | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 00 C 3555 | **DATE** | 2/26/2002 |
| **CASE TITLE** | USA vs. Othoniel Cantres | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
   ☐ FRCP4(m)   ☐ General Rule 21   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] For the reasons set forth on the attached order, the Court denies Cantres' §2255 motion (1-1) and dismisses this case with prejudice. Cantres' motions for an evidentiary hearing (20-1) and for discovery (21-1) are also denied. Additionally, because we find that jurists of reason would find no debate either as to whether Cantres' motion states a valid claim of the denial of a constitutional right or as to whether our ruling on procedural default is correct, we decline to issue a certificate of appealability. See Slack v. McDaniel, 529 U.S.473,484 (2000).

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | | |
|---|---|---|---|---|
| | No notices required. | | number of notices | Document Number |
| | Notices mailed by judge's staff. | | FEB 27 2002 | |
| | Notified counsel by telephone. | | date docketed | |
| ✓ | Docketing to mail notices. | | | 24 |
| | Mail AO 450 form. | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | U.S. DISTRICT COURT | FEB 27 2002 date mailed notice | |
| OR | courtroom deputy's initials | 02 FEB 26 PM 3:14 | | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| v. ) | Case No. 00 C 3555 |
| ) | |
| OTHONIEL CANTRES, ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

On September 10, 1998, someone unsuccessfully tried to rob the Banco Popular on Irving Park Road and Harlem in Chicago. Minutes later, Othoniel Cantres was arrested in a bush near the bank. Cantres confessed to the crime, and, on October 8, 1998, a grand jury returned an indictment charging him with attempted bank robbery and aggravated attempted bank robbery. At trial, a number of witnesses, including the bank security guard, two bank employees, and three people who happened to be in the area the morning of the robbery, fingered Cantres as the would-be robber. As it happened, two of the witnesses had actually seen Cantres and chased him with a baseball bat; he eluded them, stole their van and drove several blocks before ditching the van and hiding in the bush, where he was caught by Officer George Hardison of the Chicago Police Department. The government also introduced Cantres' confession. The arresting officer and the FBI case agent also testified; both testified that Cantres had immediately confessed to the crime, and the former testified that he had been working by himself when he arrested and questioned Cantres.

Cantres testified in his own behalf. He admitted that he had driven to the bank that

morning and had parked near the bank, but not in the parking lot. He testified that he had come to the bank to meet a woman friend who was married and worked in the bank, that while he was sitting in his car he heard gunshots, left his car and ran toward them, that he then had to run for his life from two men chasing him with a baseball bat, and that he was then arrested for something he did not do. On cross examination, he claimed that he had not parked in the bank lot because he did not want the woman's husband, who did not work at the bank, to see his car, and that he had never told Officer Hardison or any other law enforcement personnel his side of the story because, as a Puerto Rican man who looked black, he did not think anyone would help him. He maintained his innocence and said that he confessed to the crime only after being coerced to do so, that an unnamed officer who he could not identify had choked and grabbed him and threatened to hurt him unless he cooperated.

Despite Cantres' testimony, the jury convicted him on both counts. Cantres moved for a new trial, arguing that the trial judge erred by denying his pre-trial motions concerning voir dire and for discovery of any record of abuse by the officers involved in Cantres' arrest and interrogation; that the Court erred by interfering in the questioning of a witness at trial; and that the government improperly shifted the burden of proof by suggesting in closing argument that Cantres should have produced evidence to support his claim that his confession was coerced. Cantres also moved for judgment of acquittal, arguing that the evidence adduced at trial failed to prove his guilt beyond a reasonable doubt. The court denied both motions and sentenced Cantres to seventy-seven months imprisonment, plus five years supervised release and a $5,000 fine. The Clerk entered the judgment and commitment order on the docket on August 5, 1999.

On August 9, 1999, Cantres executed a document stating that he had discussed his

appellate options with his attorney and after carefully weighing the pros and cons of an appeal (including the risk that filing an appeal would cause the government to file its own appeal), he decided not to appeal his conviction and sentence. Despite that waiver, Cantres filed a notice of appeal on September 7, 1999. Because the notice of appeal was outside the time specified in Rule 4(b), the Seventh Circuit remanded the case to the district court for the limited purpose of determining whether Cantres' late appeal should be allowed. After holding a hearing on the matter, the district court denied Cantres' request to file a late appeal. Based upon that ruling, plus the parties' briefs, on March 9, 2000 the Seventh Circuit dismissed the appeal for lack of jurisdiction.

On June 13, 2000, Cantres filed the instant motion under 28 U.S.C. §2255 to vacate, set aside, or correct his sentence. He claims that he is entitled to relief because his trial attorney was constitutionally ineffective in a number of ways. Specifically, he claims that his trial attorneys: (1) pushed him to waive his appeal; (2) failed to move to suppress his confession; (3) failed to present expert testimony about false/coerced confessions; (4) failed to impeach the bank guard's testimony with the statements she gave to the FBI; (5) failed to challenge the government's identification testimony with testimony from bank employees who did not identify Cantres; (6) failed to object to the identifications made by witnesses Zuger Mohammed, Monier Jibawi and Daniel Dill; (7) failed to recall Mohammed to bolster Cantres' claim that there was a second police officer with Hardison; (8) failed to object to certain instances of prosecutorial misconduct (specifically, Cantres claims that the prosecutor called his witnesses "good Samaritans," suborned the perjured testimony of the arresting officer who testified that he was not working with a partner at the time of the arrest and interrogation, commented in opening statements and

closing arguments about the respective believability of the defendant and the witnesses for the government, and shifted the burden of proof by blaming Cantres for not calling additional witnesses); (9) failed to object to the court sending the government's exhibits to the jury room during deliberations; (10) failed to inquire about the prosecutor's reasons for striking only potential jurors who resided in Chicago; (11) failed to ask the court to clarify "reasonable doubt" in response to a question from the jury; and (12) failed to object to the court's decision to impose an obstruction of justice enhancement at sentencing. In supplemental filings, Cantres also claims that his attorneys were ineffective for failing to challenge his arrest for lack of probable cause and for failing to object to the imposition of a fine at sentencing (we'll call these grounds (13) and (14) respectively).

## DISCUSSION

"A §2255 motion must be granted when a defendant's 'sentence was imposed in violation of the Constitution or laws of the United States.'" *Fountain v. United States*, 211 F.3d 429, 433 (7th Cir. 2000) (quoting 28 U.S.C. §2255). Cantres claims that his sentence and his trial were the product of constitutionally ineffective assistance of trial counsel. To make out a successful ineffective assistance of counsel claim, Cantres must demonstrate that his counsel's performance fell below an objective standard of reasonableness and that the deficient performance so prejudiced his defense that it deprived him of a fair trial. *Strickland v. Washington*, 466 U.S. 668, 688-94 (1984). The first part of this test requires the defendant to raise specific acts or omissions he claims form the basis of his claim, which he has done. The Court then determines whether, in light of all the circumstances, those acts or omissions fell "outside the wide range of professionally competent assistance." *United States v. Trevino*, 60 F.3d 333, 338 (7th Cir. 1995).

4

The second part of the test requires the defendant to demonstrate "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different," *Fountain*, 211 F.3d at 434 (quoting *United States v. Starnes*, 14 F.3d 1207, 1209-10 (7th Cir. 1994)).

Before turning to the merits of Cantres' motion, we must first ask whether we have jurisdiction to consider his claims. Generally, issues that could have been raised on direct appeal but were not may not be raised in a motion under §2255; such claims are barred under the doctrine of procedural default. *Id.*; *Barker v. United States*, 7 F.3d 629, 632 (7th Cir. 1993). Claims that rely on evidence outside the record are not subject to procedural default. *Fountain*, 211 F.3d at 434. Additionally, claims that have been procedurally defaulted may nonetheless be raised for the first time in a motion under §2255 if the defendant can demonstrate cause for the procedural default and actual prejudice from the failure to appeal. *Barker*, 7 F.3d at 632 (citing *United States v. Frady*, 456 U.S. 152, 167-68 (1982); *Belford v. United States*, 975 F.2d 310, 313 (7th Cir. 1992)).

In his motion, Cantres raises mostly issues that could have been raised on direct appeal but were not, but he also raises a few issues – namely grounds 1 and 7 and part of ground 6 – that could not have been raised because they were not apparent from the record. As to the former, we ask whether Cantres has demonstrated cause and prejudice; as to the latter, we ask whether he has demonstrated both parts of the *Strickland* test. With regard to prejudice, Cantres addresses the issue only in the context of arguing that his ineffective assistance of counsel claims satisfy the prejudice prong of *Strickland v. Washington*, 466 U.S. 668 (1984). It is not entirely clear from the cases that the prejudice required to prove an ineffective assistance of counsel

5

claim under *Strickland* is the same prejudice that is required to excuse procedural default. *See United States v. Frady*, 456 U.S. 152, 168 (1982) ("in *Wainwright v. Sykes* we refrained from giving 'precise content' to the term 'prejudice,' expressly leaving to future cases further elaboration of the significance of that term . . . . [T]he import of the term in [some] situations thus remains an open question . . . ."). *See also* James Liebman & Randy Hertz, *Federal Habeas Corpus Practice & Procedure* §26.3c (noting that the possible tests for prejudice range from the stringent "harmless error beyond a reasonable doubt" test explained in *Chapman v. California*, 386 U.S. 18 (1967) to the less stringent "reasonable probability that the proceedings would have been different" test enunciated in *Strickland v. Washington*, 466 U.S. 668, 694 (1984)); Maria L. Marcus, *Federal Habeas Corpus After State Court Default: A Definition of Cause & Prejudice*, 53 Fordham L. Rev. 663 (March 1985) (recognizing the need for an operative definition of the term "prejudice"). But as a practical matter, if Cantres cannot prove prejudice within the context of *Strickland*, he cannot satisfy any of the more stringent tests. With this in mind, we consider each of Cantres' claims; because his first claim depends in large part on the merits of the other claims he asserts, we will address that claim last.

In ground two, Cantres alleges that his attorneys were ineffective for failing to move to suppress his confession. He claims that for the reasons he gave when he testified at trial, his attorney should have known that his confession was obtained in violation of the Constitution. Given the abundance of evidence suggesting that the confession was voluntary and the dearth of credible evidence that the confession was coerced, there is no reason to think that a motion to suppress would have been granted. Accordingly, Cantres cannot demonstrate prejudice from his attorneys' failure to file a suppression motion.

In ground three, Cantres claims that his attorneys failed to present expert testimony about false/coerced confessions and that they should have called a particular expert, Dr. Leo, to add credibility to Cantres' claim that his confession was coerced. But Cantres has not explained what Dr. Leo would have told the jury to make them think his confession was coerced; nor does he explain how such testimony would have swayed the jury in light of the other evidence that he committed the attempted robbery. He has failed to carry his burden of showing prejudice for counsel's failure to call Dr. Leo.

In grounds four and five, Cantres alleges that his attorneys failed to impeach the bank guard's testimony with the statements she gave to the FBI and failed to challenge the government's identification testimony with testimony from bank employees who did not identify Cantres. Notwithstanding the arguments Cantres makes in his motion, his attorneys thoroughly cross examined the bank security guard about the inconsistencies in the statements she initially gave the police and her testimony on direct, Trial Transcript, pp. 173-74, and thoroughly attacked the bank employees on their identification testimony, *id.* at pp. 202 (Barrera), 219 (Hasler). Cantres has not explained what more his attorneys could have done to impeach these witnesses, and the Court therefore finds that he is entitled to no relief on the basis of these claims.

Cantres next alleges that his attorneys failed to object to the identifications made by witnesses Zuger Mohammed, Monier Jibawi and Daniel Dill (ground six). Cantres argues that Mohammed first identified Cantres in a show-up, while Cantres was handcuffed in the back of a squad car, and that Jibawi saw him through a peephole poked through a piece of paper hung over a door window that lead to the interrogation room where Cantres was being held, handcuffed. He argues that both of these identification procedures were unduly suggestive and that his

7

attorney should have objected to them. He also argues that his attorney should have challenged the identification testimony of Daniel Dill, who could not initially identify Cantres from a line-up and identified him only after riding with him in an elevator at the federal building. Cantres' arguments with respect to Mohammed and Jibawi are based on evidence outside of the record and are therefore not subject to procedural default; we consider them on the merits. Even so, the Court cannot conclude that counsel behaved unreasonably with respect to the identification testimony. Cantres' attorney made much at trial of the circumstances in which these witnesses identified Cantres; in fact, the inconsistencies in and suggestiveness of the various identification procedures were one of the main points Cantres' attorney focused on in cross examination and closing argument. But the jury simply did not buy it, and there is likewise no reason to believe that the trial judge would have excluded the identification if a pretrial motion had been filed. The failure to file a motion to suppress the identifications did not constitute constitutionally ineffective assistance that deprived Cantres of a fair trial.

The arguments about Dill could have been raised on direct appeal, and we find no prejudice to excuse Cantres' procedural default. Contrary to Cantres' characterization of events, his attorney thoroughly cross-examined Dill on the circumstances surrounding his identification of Cantres as the robber, forcing Dill to concede the very points Cantres said his attorney should have raised; his attorneys also cross-examined Dill on the inconsistencies between the initial description he gave the police and Cantres' actual physical appearance. Trial Transcript, pp. 144-45, 148-49. Moreover, even without Dill, Mohammed and Jibawi, the government still had ample identification testimony pointing to Cantres as the culprit. The Court finds that Cantres suffered no prejudice because of the way his attorneys handled witnesses Mohammed, Jibawi or

8

Dill.

In ground seven, Cantres alleges that his attorneys failed to recall Mohammed to bolster Cantres' claim that there was a second police officer with Hardison. Testifying that there was another officer in the vicinity is not the same thing as testifying that that officer was harassing, badgering or torturing Cantres, and evidence of the former, which is what Cantres says he had, does nothing to further the latter, which is what Cantres needed to support his argument. And Cantres does not explain how Mohammed's testimony would have bolstered his claims of torture. Accordingly, we can find no prejudice resulting from counsel's failure to recall Mohammed.

Cantres next alleges, in ground eight, that his attorneys failed to object to certain instances of prosecutorial misconduct. These issues could have been raised on direct appeal, and we find no prejudice from the failure to raise these issues such that Cantres' procedural default can be excused. Cantres claims that the prosecutor called his witnesses "good Samaritans," suborned the perjured testimony of the arresting officer who testified that he was not working with a partner at the time of the arrest and interrogation, commented in opening statements and closing arguments about the respective believability of the defendant and the witnesses for the government, and shifted the burden of proof by blaming Cantres for not calling additional witnesses. As to the first point, even if we assume that calling his witnesses "good Samaritans" amounted to prosecutorial misconduct, Cantres' counsel actually spent a fair amount of time in her closing argument addressing why these men were in fact the opposite of "good Samaritans," characterizing them instead more as neighborhood vigilantes with baseball bats, a characterization she touched on in cross examining these witnesses as well. As to the other

points, this case, by Cantres' own admission, came down to a credibility contest: it was his word against the word of the various government witnesses. It was therefore entirely appropriate for the government to comment on the credibility and believability of his witnesses and the utter lack of credibility he wanted the jury to ascribe to Cantres. And other than Cantres' testimony, which the jury and the court disbelieved, there is no evidence that Hardison lied on the stand. In sum, Cantres can show no prejudice from the failure to raise these arguments on direct appeal.

In ground nine, Cantres alleges that his attorneys failed to object to the court sending the government's exhibits to the jury room during deliberations. This issue could have been raised on direct appeal. We see no error in the court's decision to send the government's evidence binders back to the jury room, *see United States v. Best*, 939 F.2d 425, 430-31 (7th Cir. 1991), and therefore Cantres can show no prejudice excusing his failure to raise the issue on appeal. We also note that Cantres has not argued how, if at all, the presence of the binders – which contained only admitted evidence as far as we can tell – prejudiced the jury's verdict.[1]

In ground ten, Cantres claims that his attorneys should have inquired about the prosecutor's reasons for striking only potential jurors who resided in Chicago. Striking a juror because of where he lives is not unconstitutional, *see United States v. Alanis*, 265 F.3d 576, 585 (7th Cir. 2001) (under *Batson v. Kentucky*, 476 U.S. 79 (1986), peremptory strikes may be made for a variety of reasons as long as they are not race based), and therefore even if Cantres' attorneys failed to object to those strikes, neither the Constitution nor any federal law is implicated. There was no prejudice to Cantres from the failure to raise this issue on appeal.

---

[1] Cantres' attorney *did* object to the jury getting the binders before any evidence was received, and the court agreed that that was improper. *See* Report of Trial Proceedings, p. 118, 132.

10

In ground eleven, Cantres claims his attorneys failed to ask the court to clarify "reasonable doubt" in response to a question from the jury. "It is well established in this Circuit . . . that neither trial courts nor counsel should attempt to define 'reasonable doubt' for the jury," *United States v. Bruce*, 109 F .3d 323, 329 (7th Cir.1997), so we can hardly say it was unreasonable for Cantres' attorneys to go along with the trial court's decision not to give the jury a definition. Thus, even on the merits this claim would fail.

In ground twelve, Cantres alleges that his attorneys failed to object to the court's decision to impose an obstruction of justice enhancement at sentencing. But his attorney *did* object to the court's imposition of an obstruction of justice enhancement (and the court quickly and strongly rebuffed her because of it). *See* Transcript of Sentencing Hearing, p. 13. Thus Cantres is not entitled to relief based on this allegation.

In ground thirteen, Cantres claims that his attorneys were ineffective for failing to challenge his arrest for lack of probable cause. But Cantres' conduct in and around the area of the bank the morning of the attempted robbery, coupled with the information transmitted via the police department's flash reports, gives the Court every reason to believe that Officer Hardison had ample cause to arrest Cantres, making it highly unlikely that a motion to quash the arrest would have prevailed. Cantres also claims that his attorneys were ineffective for failing to object to the imposition of a fine at sentencing. He argues that his attorney should have objected to the fine because he had no money to pay it. But the court imposed the fine to be paid "from any wages you may earn in prison [in] accordance with the Bureau of Prison's Financial Responsibility Program," *see* Sentencing Transcript (Aug. 2, 1999), p. 30, which means that any objection or argument based on Cantres' financial situation in the outside world would have been

11

irrelevant and futile. Cantres cannot establish prejudice with respect to either of these alleged deficiencies.

Finally, we consider Cantres' claims that his attorneys were ineffective in failing to advise him of non-frivolous issues for appeal and for pushing him instead to waive his right to appeal (ground 1). Because this claim is based on evidence outside the record, we consider it on the merits and ask whether Cantres can satisfy both parts of the *Strickland* test. As to the first part of the test, given our assessment of the various issues he has raised, we cannot say that the decision to waive an appeal was objectively unreasonable. On the contrary, given that Cantres had received some favorable rulings at sentencing, the risk that an appeal could provoke a cross-appeal from the government and leave him worse off than he was makes the decision to waive the appeal seem eminently reasonable. *See United States v. Brown*, 273 F.3d 747, (7th Cir. 2001) (noting that defendants who receive favorable calls under the federal sentencing guidelines should think more than twice about appealing their cases when they have little likelihood of success because a defendant's appeal often draws a cross- appeal by the government of the sentence imposed where it otherwise might not be inclined to appeal). Based on the waiver, to which is attached a drawing and chart showing the various possible outcomes of an appeal and the percentage likelihood counsel ascribed to each, it is clear that the deciding factor in the decision not to appeal was the concern that a cross-appeal by the government would undo some of the sentencing breaks the trial judge had given Cantres. For example, over the government's objection, the trial judge refused the government's request to increase Cantres' base offense level from a 25 to a 28 based on Cantres' possession of a handgun. *See* Sentencing Transcript, pp. 4-11. The government's argument in favor of this enhancement was based on a bank guard's

12

testimony that after entering the bank Cantres had tried to wrest her gun from her and that this was sufficient to show that he intended to possess a firearm, which it claimed was sufficient to warrant an enhancement under U.S.S.G. §§2B3.1(b)(2) and 2X1.1. Though the trial judge rejected this argument, because there was conflicting evidence as to whether Cantres intended to wrestle the gun away from the bank security guard and whether he ever actually succeeded in getting the gun, the concern that the government might cross-appeal if Cantres appealed properly loomed large and amply justified counsel's decision not to risk an appeal; at risk was as much as 44 months of additional prison time. *See* Sentencing Table (1998) (comparing Cantres' 77 month sentence under a total offense level of 27 with a range of 97 to 121 months for offense level 30). Moreover, given our resolution of the claims raised in this motion, we cannot conclude that Cantres was in any way prejudiced by not being able to pursue an appeal; on this record there is no reason to believe he would have had any change of prevailing. Accordingly, we cannot conclude that the attorneys' advice that he waive his right to appeal amounted to ineffective assistance of counsel.

## CONCLUSION

For the reasons explained above, the Court denies Cantres' §2255 motion [Docket # 1-1] and dismisses this case with prejudice. Cantres' motions for an evidentiary hearing [Docket # 20-1] and for discovery [Docket # 21-1] are also denied. Additionally, because we find that jurists of reason would find no debate either as to whether Cantres' motion states a valid claim of the denial of a constitutional right or as to whether our ruling on procedural default is correct, we decline to issue a certificate of appealability. *See Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

Dated: February 26, 2002

MATTHEW F. KENNELLY
United States District Judge